# UNITED STATES DISTRICT COURT OF
# EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| CHARLES GARMON<br><br>   Plaintiff,<br>v.<br><br>CITY OF NORTHWOODS, MISSOURI, et al.<br><br>   Defendants. | Cause No.: 4:23-cv-1403<br><br>**JURY TRIAL DEMANDED** |

## RESPONSE TO CITY OF NORTHWOODS, MISSOURI'S MOTION TO DISMISS

The City of Northwoods, Missouri ("City") allows its police officers to take citizens—against their will—to remote locations outside of its jurisdiction for the purpose of punishment and deterrence from re-entry into the City. That practice resulted in Plaintiff being savagely beaten and pepper sprayed, while handcuffed, in an abandoned area of Kinloch, Missouri, well outside of the jurisdiction of the City's police force. Because Plaintiff pled facts that support the existence of unconstitutional policies, customs, supervision and training, the Motion to Dismiss must be denied.

The City's individual arguments are unavailing. It is settled law that Plaintiff need not plead the specific policy or custom at issue. See *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003). He need only plead facts that "support the existence of an unconstitutional policy or custom." *Id.* He's certainly done that here. And he's properly alleged causation, despite the City's argument that he didn't use the magic words "moving force" in the original Complaint. Finally, the facts alleged plausibly state a claim for conspiracy, as they specifically describe the City's policymaker (Hill) turning off his body camera, having a conversation with Defendant Davis, and then telling Walgreens employees that Plaintiff would be taken away to be beaten, which promptly occurred. Finally, the intracorporate conspiracy doctrine

1

does not apply to Section 1983 claims, as this Court has already held. *Aldridge v. City of St. Louis, Missouri*, No. 4:18-CV-1677 CAS, 2019 WL 1695982, at *8 (E.D. Mo. Apr. 17, 2019).

No matter how the original Complaint is construed, however, the claims against the City certainly cannot be dismissed now that Plaintiff has offered his Amended Complaint (**Exhibit 1**, *Plaintiff's First Amended Complaint*). Armed with information obtained 12 days ago from the St. Louis County prosecutor—in response to a Sunshine request submitted by Plaintiff on July 26, 2023—Plaintiff has submitted many additional facts that resolve any doubt about the plausibility of his claims against the City. Because leave to amend should be freely granted at this stage (FED. R. CIV. P. 15(a)) and "parties should usually be given at least one chance to amend their complaint" (*Wisdom v. First Midwest Bank, of Poplar Bluff*, 167 F.3d 402, 409 (8th Cir. 1999)), the Court should grant leave to amend and overrule Defendant's Motion to Dismiss if it has any question about the plausibility of the original Complaint.

This is an easy call. The City is not entitled to dismissal.

## ARGUMENT

### A. Legal Standard: Dismissal Is A Harsh Remedy And the Plaintiff Need Only Give Defendants Fair Notice of Nature and Basis of His Claims

"Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief." *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007) (internal quotation marks omitted). "Specific facts are not necessary; the statement need only give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Id*. "A plaintiff has stated a claim when the well-pleaded facts 'give the opposing party fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Christopher v. Ramsey Cnty.*, 621 F. Supp. 3d 972, 979 (D. Minn. 2022) (quoting *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848–49

(8th Cir. 2014)). And "the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009).

"Granting a motion to dismiss is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Clinton v. Sec. Benefit Life Ins. Co.*, 63 F.4th 1264, 1276 (10th Cir. 2023) (internal brackets omitted). "There is a low bar for surviving a motion to dismiss." *Id.* A "well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "The standard is not what specific facts 'would have been preferable for the Plaintiff[s] to plead,' but whether the allegations sufficiently put each defendant on notice of the claims against it." *Smith v. JEENS, Inc.*, No. 1:21-CV-00002, 2021 WL 7906205, at *4 (S.D. Iowa Sept. 27, 2021) (*citing Johnson v. McDonald Corp.*, 542 F.Supp.3d 888, 891-92 (E.D. Mo. 2021)).

### B. The City Misstates Plaintiff's Burden, which is Only to State Facts that Support the Existence of Unconstitutional Policies, Customs, Directives, Training or Supervision

First, the City moves the goalposts by arguing for dismissal because the Complaint "alleges neither a policy nor a custom (or usage arising therefrom), and no circumstances supporting even a hint of deliberate indifference." **Doc. 21**, p. 5. Under well-established law, a complaint need not "describe or identify any policies or customs which may have caused the deprivation of a constitutional right." *Norfolk*, 340 F.3d at 614. "[S]uch a holding would disregard the liberality of Fed.R.Civ.P. 8(a)(2) which requires merely 'a short and plain statement of the claim showing that the pleader is entitled to relief,' and 8(f), which states 'pleadings shall be so construed as to do substantial justice.'" *Id.* Rather, a plaintiff need only "***allege facts*** which would ***support the***

3

*existence* of an unconstitutional policy or custom." *Id.* (emphasis added). This district recognizes that identification of a policy or custom is a question to be resolved at the summary judgment stage. *See Cooper v. Hutcheson*, No. 1:17-CV-00073-JAR, 2020 WL 7122421, at *4 (E.D. Mo. Dec. 3, 2020) ("If Plaintiffs are unable to identify such an unconstitutional policy or custom after discovery, [defendant] is free to renew this argument in a motion for summary judgment.").

Plaintiff agrees that policies and customs are analyzed separately. But that only helps Plaintiff's case because he can allege a *Monell* claim under either theory. Further, both the original complaint and the proposed First Amended Complaint support the existence of unconstitutional policies, directives, customs, training and supervision.

1. **Unconstitutional Policies**

"Official policy involves a deliberate choice to follow a course of action made from among various alternatives by an official who [is determined by state law to have] the final authority to establish governmental policy." *Ware v. Jackson Cnty., Mo.*, 150 F.3d 873, 880 (8th Cir. 1998) (quoting *Monell v. Department of Soc. Serv.*, 436 U.S. 658, 691, (1978)). Because an official policy speaks for itself about the intent of public officials, proof of a single act by a policymaker may be sufficient to support liability." *Jenkins v. Cnty. of Hennepin, Minn.*, 557 F.3d 628, 633 (8th Cir. 2009).

While the incident suffered by a plaintiff, on its own, is insufficient to establish a policy, *two* incidents *are* enough:

> Here, plaintiff has alleged that defendant has a policy of conditioning access to the alternative authorization process on parental notification contrary to constitutional mandate, and that defendant implemented this policy to the detriment of plaintiff on at least two occasions, thereby damaging her. This sufficiently states a claim against defendant in her official capacity, so the motion to dismiss is denied.

*Doe v. Chapman*, No. 2:19 CV 25 CDP, 2019 WL 5887353, at *3 (E.D. Mo. Nov. 12, 2019) (denying motion to dismiss unconstitutional policy claims).

Here, the original Complaint surely pleads the existence of more than one incident, as Plaintiff alleges the City is has engaged in "arresting and detaining ***individuals*** without probable cause." **Doc. 1**, p. 3, ¶ 18(a). However, the amended complaint puts this issue beyond any doubt. Not only has Plaintiff alleged he was subjected to the same unconstitutional conduct "several times before" the incident at issue (**Ex. 1**, p. 3, ¶ 21), but he has clearly pled this conduct has been happening to citizens in the City for years (**Ex. 1**, p. 2, ¶¶ 8-13) and has been authorized by official policy. **Ex. 1**, p. 2, ¶ 17.

Plaintiff stated a claim for unconstitutional policies in the original Complaint. He certainly has done so in the Amended Complaint.

    **2. Unconstitutional Directive**

In *Pembaur v. City of Cincinnati*, the United States Supreme Court held, "it is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). Thus, "where action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly." *Id.* at 481*; see also Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 405 (1997) ("Similarly, the conclusion that the action taken ***or directed*** by the municipality ***or its authorized decisionmaker*** itself violates federal law will also determine that the municipal action was the moving force behind the injury of which the plaintiff complains." *Id.* (emphasis added). "To deny compensation to the victim would therefore be contrary to the fundamental purpose of § 1983." *Pembaur*, 475 U.S. at 481.

While liability may only arise from a policy created by a "policymaker," the legal conclusion as to which individuals qualify as a policymaker is dependent on the facts, because municipal liability may be predicated upon the act of even a low-level subordinate who has been ***delegated*** final authority. *Pembaur v. City of Cincinnati,* 475 U.S. 469, 483, (1986) ("authority to make municipal policy may be granted directly by a legislative enactment ***or may be delegated by an official who possesses such authority***." *Id.* "As with other questions of state law relevant to the application of federal law, the identification of those officials whose decisions represent the official policy of the local governmental unit is itself a legal question to be resolved by the trial judge ***before the case is submitted to the jury***." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737, (1989) (emphasis added).

Plaintiff's Amended Complaint surely survives this standard. He alleges, "…Hill was exercising final policymaking authority, delegated to him by the City on the issue of where to take detainees, when he directed Davis to take Garmon outside the City of Northwoods to commit the unconstitutional acts described herein against Garmon." **Ex. 1**, p. 4, ¶ 26. While the City may dispute the delegation of authority, that is a question for summary judgment.

3. **Unconstitutional Customs**

Setting aside the unsupported argument that Plaintiff must allege the actual custom (*see Norfolk*, 340 F.3d at 614, discussed above) the City argues it cannot be held liable for an unconstitutional custom because the "sole allegation of his own single circumstance cannot support a claim" and he has pled "no circumstances supporting even a hint of deliberate indifference." It is wrong on both counts.

First, and again, even the original Complaint alleges this has happened to more than just Plaintiff. **Doc. 1**, p. 3, ¶ 18(a) ("arresting and detaining ***individuals*** without probable cause."). And

the amended complaint cannot seriously be challenged on this point, as it alleges with detailed specificity the pervasive conduct at issue:

> 8. For several years, Police in the City of Northwoods have regularly detained citizens and taken the citizen somewhere other than jail.
> 9. For several years, Police in the City of Northwoods have regularly taken detained citizens outside of the City of Northwoods against their will.
> 10. For several years, Police in the City of Northwoods have regularly taken detained citizens to the City of Kinloch against their will.
> 11. For several years, Police in the City of Northwoods have regularly taken detained citizens outside the jurisdiction of the City of Northwoods for the purpose of harming them, allowing others to harm them, or to punish the detained citizen.
> 12. For several years, Police in the City of Northwoods have regularly taken detained citizens outside the jurisdiction of the City of Northwoods for the purpose of unlawfully deterring the citizen from exercising his or her rights to be present in the City of Northwoods.
> 13. For several years, Police in the City of Northwoods have regularly detained citizens beyond the time required to process the administrative steps incident to arrest.

**Ex. 1**, p. 2, ¶¶ 8-13. Based on Eighth Circuit precedent, these allegations are more than enough to state a claim. *See Meier v. St. Louis, Missouri, City of*, 934 F.3d 824, 828 (8th Cir. 2019) (holding facts that police officers "regularly" engage in unconstitutional conduct "if believed, would demonstrate [a] continuing, widespread, persistent practice.").

The same is true of deliberate indifference. First, the original Complaint clearly alleges that the City engaged in "pervasive" practices including arresting and detaining individuals without probable cause and using excessive force. **Doc. 1**, p. 3, ¶¶ 18(a-b). It also alleges the city "showed a complete indifference to or a conscious disregard for the safety of Plaintiff" and that the City caused Plaintiff's damages. **Doc. 1**, p. 4, ¶¶ 23-24. Read as a whole, the allegations in the Complaint plausibly allege a claim. *See Braden*, 588 F.3d at 594.

The Amended Complaint, of course, leaves no doubt about the City's deliberate indifference:

> 15. The practices of the Police in paragraphs 8-13 have been known to the City's Mayor, Board of Aldermen, Police Chief, and/or police officers that have been delegated final policymaking authority before July 4th, 2023.
> 18. Despite knowledge of practices of the Police in paragraphs 8-13, the City's Mayor, Board of Aldermen, Police Chief, and/or police officers that have been delegated final policymaking authority deliberately failed to act on this knowledge before July 4th, 2023.
> 42. Defendant was made aware of the unconstitutional customs, practices and usages stated in this Complaint.
> 43. Defendant was deliberately indifferent to the unconstitutional customs, practices and usages stated in this Complaint.
> 44. Defendant's conduct—including the policies and/or deliberate indifference to the unconstitutional customs, practices, usages and/or need for more or different training and supervision stated in this Complaint—was the moving force and proximate cause of the violations of Plaintiff's constitutional rights.

**Ex. 1**, pp. 3, 6, ¶¶ 15, 18, 42-44.

### 4. Unconstitutional Training and/or Supervision

Finally, Plaintiff has stated a claim for relief for unconstitutional training and supervision. The City equates a failure to train claim with a custom claim. **Doc. 5**, p. 5 (citing, by way of *Hopple v. St. Francois Cnty., Missouri*, 4:22 CV 1101 RWS, 2023 WL 5748408, at *3 (E.D. Mo. Sept. 6, 2023), *Marsh v. Phelps Cnty.*, 902 F.3d 745, 752 (8th Cir. 2018)). To be sure, *Marsh* recognizes the Supreme Court's holding that a plaintiff must plead and prove the training provided by a municipality demonstrates deliberate indifference. *Marsh v. Phelps Cnty.*, 902 F.3d 745, 752 (8th Cir. 2018) ("Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." (*quoting City of Canton v. Harris*, 489 U.S. 378, 389 (1989)). However, while a custom claim requires notice of repeated instances of unconstitutional conduct, a training claim, like a policy claim does not:

> it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need. In that event, the failure to provide proper training may fairly be said to represent a policy

for which the city is responsible, and for which the city may be held liable if it actually causes injury

*City of Canton, Ohio v. Harris*, 489 U.S. at 390. "In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury." *Id.* Of course, indifference to the need for more or different training after notice of a pattern of constitutional violations can also lead to liability. *Id.* at 397.

Here, it matters not whether the need was obvious, because Plaintiff originally pled multiple violations of constitutional rights and a failure to train. **Doc. 1**, p. 3, ¶¶ 18(a-b, d). And the Amended Complaint leaves no doubt:

> 19. Despite knowledge of practices of the Police in paragraphs 8-13, the City's Mayor, Board of Aldermen, Police Chief, and/or police officers that have been delegated final policymaking authority deliberately and intentionally failed to provide adequate training or supervision concerning detention of subjects that not taken to jail and before July 4th, 2023.
> 20. Pleading in the alternative, the City of Northwoods failed to provide any training or supervision of its officers concerning detention of subjects that are not taken to jail before July 4th, 2023.

**Ex. 1**, p. 3, ¶¶ 19-20. Moreover, because Northwoods ordinance § 200.020 specifically gives an officer power to take an arrestee either to jail "***or other place***," a complete failure to train officers on where they may take individuals, if not to jail, is exactly the kind of "obvious" situation that would require no notice of a pattern of unconstitutional behavior in order to state a claim.

### C. Plaintiff Pleads Facts Supporting His Claims that the City's Actions Were the Moving Force Behind the Violations

The City faults Plaintiff for not using the words "moving force" in the Complaint. If he had, no doubt the City would simply disregard those words as a legal conclusion. In any event, the City admits "moving force" is another way of saying causation, which Plaintiff specifically pleads, even in the original Complaint. **Doc. 1,** p. ¶ 23-24. More importantly, the Amended Complaint

leaves no doubt that the City's actions and lack of action were the moving force behind the violations of Garmon's constitutional rights:

> 25. ***Pursuant to the aforementioned policies, customs, and directives***, Hill instructed Davis to take Garmon outside of the City of Northwoods against his will.
> 26. Pleading in the alternative, Hill was exercising final policymaking authority, delegated to him by the City on the issue of where to take detainees, when ***he directed Davis to take Garmon outside the City of Northwoods to commit the unconstitutional acts described herein*** against Garmon.
> 44. Defendant's conduct—including the policies and/or deliberate indifference to the unconstitutional customs, practices, usages and/or need for more or different training and supervision stated in this Complaint—***was the moving force and proximate cause of the violations of Plaintiff's constitutional rights***.

**Ex. 1**, p. 4, 6, ¶¶ 25, 26, 44. The City is free to produce its own evidence showing Garmon was ejected from Northwoods and savagely beaten for some other reason. But, at this stage, Plaintiff's allegation that the conduct alleged against Garmon—and many others—occurred due to the City's policies, customs, directives, training and supervision must be taken as true.

### D. Plaintiff Concedes Punitive Damages Claims Cannot Be Made at This Time

Based on the facts known at this time, Plaintiff concedes his punitive damages cannot be asserted against the City. However, neither the original nor the Amended Complaint allege the City is liable for punitive damages. So, no claims need be dismissed. To the extent that Plaintiff pleads punitive damages against Hill and Davis in their individual capacities, the claims cannot be dismissed. *See Kopman v. City of Centerville*, 871 F. Supp. 2d 875, 898 (D.S.D. 2012) ("Regarding Kopman's punitive damages claim against Ostrem in his individual capacity, '[p]unitive damages may be awarded under 42 U.S.C. § 1983 'when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'") (*quoting Schaub v. VonWald*, 638 F.3d 905, 922 (8th Cir. 2011)).

### E. Plaintiff States a Civil Conspiracy Claim Against the City

**1. Both the Original and Amended Complaints Allege a Facially Plausible Claim**

The City ignores the facts pled in the original Complaint:

> 9. Davis and Hill both turned off their body cameras prior to apprehending Garmon.
> 10. Upon information and belief, Hill then returned to Walgreens and informed an employee that Garmon would be beaten.
> 11. Davis drove Garmon to the intersection of Martin Luther King Boulevard and Hugo Avenue in Kinloch.
> 12. Once at the location, Davis pepper sprayed and repeatedly beat Garmon with a baton while he was still handcuffed.

**Doc. 1**, pp. 2-3, ¶¶ 9-12. Any reasonable reading of these facts reveals a clear agreement between Hill and Davis that Davis would be taking Garmon away to beat him. But the Amended Complaint's additional allegations leave no doubt about this:

> 26. Pleading in the alternative, Hill was exercising final policymaking authority, delegated to him by the City on the issue of where to take detainees, when he directed Davis to take Garmon outside the City of Northwoods to commit the unconstitutional acts described herein against Garmon.
> 31. Hill and Davis's conversation outside the Walgreens on July 4th, 2023 constituted a meeting of the minds of Hill, in his official and individual capacities, and Davis to conspire to deprive Garmon of his constitutional rights as aforementioned.
> 38. Hill and Davis misled investigators following Garmon's beating to cover up their conspiracy.
> 39. Hill and Davis lied to investigators following Garmon's beating to cover up their conspiracy.

**Ex. 1**, p. 4-5, ¶¶ 26, 31, 38-39. The facts alleged in both the original and the Amended Complaint plausibly state a claim for conspiracy.

**2. The Intracorporate Conspiracy Doctrine Does Not Apply to Section 1983 Claims and Should Not Be Applied at the Dismissal Stage**

This Court has already held that a "City's argument that plaintiff's § 1983 conspiracy claim must be dismissed under the intracorporate conspiracy doctrine is unpersuasive." *Aldridge*, 2019 WL 1695982, at *8. "In addition, this Court has concluded on several occasions that it is inappropriate to apply the doctrine at the dismissal stage." *Id.* (citing *Powers v. City of Ferguson*,

229 F.Supp.3d 894, 906 (E.D. Mo. 2017);, *Golden v. Moutray*, 2018 WL 1784395, at *4 (E.D. Mo. Apr. 13, 2018), and *Anzaldua v. Northeast Ambulance & Fire Prot. Dist.*, 2014 WL 466234, at *8 (E.D. Mo. Feb. 5, 2014), *aff'd in part, rev'd in part on other grounds*, 793 F.3d 822 (8th Cir. 2015). "And, as Judge Noce observed in *Golden*, some other district courts have affirmatively held the doctrine does not apply to § 1983 conspiracies to commit excessive force":

> Some courts have held that the intracorporate conspiracy doctrine does not protect conspiracies to commit excessive force under Section 1983. *See, e.g., McDorman v. Smith*, 2005 WL 1869683, at *6 (N.D. Ill. Aug. 2, 2005). Those courts have reasoned that "the intracorporate conspiracy doctrine was created to shield corporations and their employees from conspiracy liability for routine, collaborative business decisions that are later alleged to be discriminatory," *Newsome v. James*, 2000 WL 528475, at *15 (N.D. Ill. Apr. 26, 2000), and "police misconduct ... does not fit that mold because conspiracy and cover-up are not the product of routine police department decision-making." *McDorman*, 2005 WL 1869683 at *6; *see also Howard v. City of Chicago*, 2004 WL 2397281 at *12 (N.D. Ill. Oct. 25, 2004).

*Id.* (quoting *Golden*, 2018 WL 1784395, at *4). The intracorporate conspiracy doctrine doesn't apply to Section 1983 claims. At the very least, it is inappropriate to apply at the pleading stage.

## CONCLUSION

Plaintiff's original Complaint states a claim against the City under many theories, including unconstitutional policies, customs, directives, training and supervision. But the Amended Complaint puts this question to bed completely. The City's Motion must be denied.

Dated: January 16, 2024          **THE SIMON LAW FIRM, P.C.**

By: */s/ Patrick R. McPhail*
Kevin M. Carnie Jr., #60979MO
Patrick R. McPhail, #70242MO
800 Market Street, Suite 1700
St. Louis, MO 63101
Telephone: 314-241-2929
Facsimile: 314-241-2029
kcarnie@simonlawpc.com
pmcphail@simonlawpc.com
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of January, 2024 I electronically filed the foregoing with the clerk of the court using the CM/ECF system which will send notice of electronic filing to all counsel of record.

*/s/ Patrick R. McPhail*
